# UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| SE PROPERTY HOLDINGS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 14-0050-KD-N |
| | ) |
| WILLIAM PARKS; REGINA PARKS; | ) |
| PARKS FAMILY, LLC; and 1307, LLC, | ) |
| | ) |
| Defendants. | ) |

## ORDER

This action is before the Court on defendants William and Regina Parks' motion to stay proceeding pending resolution of Baldwin County Circuit Court actions (doc. 25) and the response in opposition filed by plaintiff SE Property Holdings, LLC (SEPH) (doc. 29). Upon consideration and for the reasons set forth herein, the motion is GRANTED.

I. Background

In 2006, along with thirty-five other investors, William and Regina Parks executed Continuing Unlimited Guaranty Agreements to guarantee Water's Edge, LLC's two loans with Vision Bank, SEPH's predecessor, for the development of a marina in Fort Morgan, Alabama. In 2008, the Parks executed an Acknowledgment, Ratification and Consent to reaffirm this obligation and an increase in the loans. Water's Edge defaulted on its loans. In June 2010 Vision Bank demanded payment from the Parks and the other guarantors pursuant to their guarantee agreements. (Doc. 21; Doc. 21-7; Doc. 21-8) In 2010, Vision Bank filed suit on the loan and the guarantee agreements in the Circuit Court of Baldwin County, Alabama. *See Vision Bank v. Water's Edge, et al.*, Civil Action No. 2010-901862.

In 2007, along with ten other investors, the Parks executed Continuing Guaranty

Agreements to guarantee Riverfront LLC's loan with Vision Bank for the development of a condominium at Orange Beach, Alabama. Riverfront defaulted on its loan. In August 2010, Vision Bank demanded payment from the Parks and the other guarantors pursuant to their guarantees. (Doc. 21; Doc. 21-11) In 2010, Vision Bank filed suit on the loan and the guarantee agreements in the Circuit Court of Baldwin County Alabama. *See Vision Bank v. Riverfront, LLC, et al.*, Civil Action No. 2010-902197.

In September 2009, the Parks formed Parks Family, LLC and they were the sole members. In February 2010, they transferred six parcels of real property to this LLC. In March 2010, the Parks formed 1307 LLC and they were the sole members. That same month, they transferred one parcel of real property to this LLC.

In February 2014, SEPH filed this action pursuant to the Alabama Uniform Fraudulent Transfer Act, Ala. Code. § 8-9A-1, (AUFTA) to avoid and set aside conveyances of real property in Baldwin County, Alabama. (Doc. 21, amended complaint) SEPH alleges that the transfers to the LLCs were fraudulently made to place these parcels of real property beyond reach because the Parks owe SEPH an amount in excess of $20,000,000.00 for the Waters Edge and Riverfront loans and owe Wells Fargo an amount of about $195,000.00. SEPH seeks a judgment avoiding the transfers of real property. The Parks now move the Court to stay this action pending resolution of the two underlying actions in the Baldwin County Circuit Court. (Doc. 25) SEPH opposes the motion. (Doc. 29)

II. <u>Analysis</u>

The Parks argue that SEPH's fraudulent transfer claims depend on whether they owe SEPH on the Water's Edge and Riverfront guarantee agreements. The Parks assert that these same debts are the subject of two actions pending in the Baldwin County Circuit Court.

2

The Parks state that the Water's Edge action is set for trial in September 2014, following extensive litigation beginning in 2010. In that action, the Parks challenge the validity of the same guarantee agreements that form the basis of SEPH's claims of fraudulent transfer in this action. The Parks have asserted affirmative defenses and counterclaims, including a counterclaim to rescind or cancel the guarantees and for release from the obligation. They also seek declaratory judgment that the guarantees are unenforceable and that SEPH is prohibited from any action based on the guarantees.

The Parks also state that the Riverfront action is set for trial in March 2015 and has been subject to similar extensive litigation beginning in 2010. SEPH seeks to enforce the Parks' guarantee agreements. The Parks asserted the same or similar affirmative defenses and counterclaims and added seven counterclaims which if successful would result in a rescission or cancellation of the guarantee agreements..

The Parks argue that their liability for the guarantee agreements that form the basis of this fraudulent transfer action is contingent on the Baldwin County Circuit Court's decisions in Waters Edge and Riverfront. They argue that in the interest of judicial economy under the doctrine of abstention established in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), the action in this Court should be stayed pending the decisions.

*Colorado River* authorizes a federal court to dismiss or stay an action where there is an ongoing parallel action in state court, but only under "exceptional circumstances" because the general rule is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter" in federal court and federal courts have a "virtually unflagging obligation to exercise their jurisdiction." *Jackson-Platts v. General Elec. Capital Corp.*, 727 F.3d 1127, 1140 (11th Cir. 2013); *Moorer v. Demopolis Waterworks and Sewer Bd.*, 374 F.3d 994,

997 (11th Cir. 2004); *Ambrosia Coal & Constr. Co. v. Pages Morales*, 368 F.3d 1320, 1328 (11th Cir. 2004). Abstention under the *Colorado River* doctrine is an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River*, 424 U.S. at 813. The principles of abstention in *Colorado River* "rest on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Colorado River*, 424 U.S. at 817 (citation omitted). Overall, applying *Colorado River* to stay a federal action "in deference to parallel state proceedings is an extraordinary step that should not be taken absent a danger of a serious waste of judicial resources." *Noonan South, Inc. v. Volusia County*, 841 F.2d 380, 383 (11th Cir.1988).

A parallel state action involves "substantially the same parties and substantially the same issues." *Ambrosia Coal*, 368 F.3d at 1330. "There is no clear test for deciding whether two cases contain substantially similar parties and issues. But…the balance…begins titled heavily in favor of the exercise of the [federal] court's jurisdiction…if there is any substantial doubt about whether two cases are parallel the court should not abstain." *Acosta v. James A. Gustino, P.A.*, 478 Fed.Appx. 620, 622 (11th Cir. 2012). In this circuit, "a stay, not a dismissal, is the proper procedural mechanism for a district court to employ when deferring to a parallel state-court proceeding under the *Colorado River* doctrine." *Moorer*, 374 F.3d at 997.

The Parks argue that the proceedings are parallel because they involve substantially the same parties and the same underlying financial transactions. The Parks argue that the Baldwin County Circuit Court must "determine the issues before it, particularly whether the Parks are liable to SEPH under the guaranty agreements, before the Court is able to determine whether the Guarantor Defendants are liable for fraudulent conveyance." (Doc. 25-2, p. 9)

SEPH argues that the actions are not parallel. SEPH asserts that it and the Parks are only

4

three of more than fifty parties in the state court proceedings and that Parks Family, LLC and 1307, LLC are not parties to either state court proceeding. SEPH argues that this proceeding does not involve the same causes of action as the state proceedings and does not involve the same issues because the defendants here have not yet answered or otherwise put their dispute of the debt before this Court. SEPH also argues that it does not seek the same type of relief here as in the state court, instead it "seeks to set aside certain fraudulent transfers of real property so that the Parkses will not have rendered themselves collection-proof when a final judgment is entered in the state court proceeding." (Doc. 29, p. 5)

Before reaching the factors for *Colorado River* abstention, the Court first must resolve whether the actions are parallel. In that regard, the parties are substantially the same. SEPH and the Parks are parties to this action and both state court actions, even though there are numerous other parties in the two state court actions and the Parks Family, LLC and 1307, LLC are not parties in the state court actions. The parties need not be identical. *See Ambrosia Coal*, 368 F. 3d at 1330 ("The Federal Case and the Puerto Rico Case involve substantially the same parties, although some of the defendants in the Federal Case ... are not parties to the Puerto Rico Case.")

At least part of the claims and issues in the state court actions are substantially the same as this action. A decision regarding the validity and enforceability of the Parks' guarantee agreements will dictate the results of those claims and issues in all three actions. SEPH argues that the proceedings are unrelated because it does not seek to hold the Parks liable on SEPH's breach of contract claims, or rather breach of guarantee claims, to recover the loaned money, but rather this is an action to avoid certain conveyances of real property. However, to void a conveyance under the AUFTA, SEPH "must prove three elements: (1) it or another creditor was defrauded; (2) the debtor intended to defraud by actual or constructive fraud; and (3) [SEPH's]

5

claim "could have been satisfied or partially satisfied by the conveyed property." *Strategic Well-Site Materials & Logistics, LLC v. Frac Master Sands, LLC*, 2013 WL 1282053, *3 (N.D. Ala. Mar. 25, 2013) (citations omitted). Thus, SEPH must establish that it is a creditor of the Parks. Under Alabama law, "[a]nyone is a creditor, under [the AFTA], who has a right by law to demand, either presently or upon future contingency, the fulfillment of any obligation or contract." *Id.* (citations omitted). Thus, a "contingent claim, is as fully protected, as a claim that is certain and absolute". *Id*. (citations omitted). Arguably, SEPH is a "creditor" since it has made demand for payment based upon the guarantee agreements. However, if the Parks are successful in the state court actions and obtain rescission or cancellation of the guarantee agreements, then SEPH would not be a "creditor" as contemplated under the Act. Therefore, even though SEPH is not asserting a claim for breach of the guarantee agreements in this action, the enforceability of the guarantee agreements is at issue. Also, although the Parks and the LLC's have not yet answered SEPH's complaint, the Parks' motion indicates that they would probably challenge the enforceability of the guarantee agreements in this action. The remaining claims and issues that the Parks allege exist in the state court actions[1] are problematic in that those have no apparent parallel in this action. However, for purposes of the *Colorado River* analysis, the Court will assume that the actions are sufficiently similar.

The Eleventh Circuit identified six factors for the district courts to consider when assessing whether exceptional circumstances exist that render *Colorado River* abstention proper:

---

[1] In addition to their counterclaims for rescission and cancellation of the guarantee agreements, the Parks state that they have asserted "numerous affirmative defenses" including but not limited to SEPH's capacity to sue, the lack of good faith and fair dealing on the part of its predecessor Vision Bank, failure to mitigate, equitable defenses, legal defenses, defenses to contract formation, and fraud. (Doc. 25-1, p. 3, 5) The Parks and the LLC's have not answered and thus have not counterclaimed or asserted any affirmative defenses.

1) whether any court has assumed jurisdiction over property, 2) the relative inconvenience of the fora, 3) the potential for piecemeal litigation, 4) the temporal order in which each forum obtained jurisdiction, 5) whether state or federal law governs, and 6) whether the state court is adequate to protect the parties' rights. *Ambrosia Coal*, 368 F.3d at 1331. Additionally, "the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under *Colorado River*." *Id.* (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 17 n. 20 (1983). "[T]he factors must be considered flexibly and pragmatically, not as a mechanical checklist." *Ambrosia Coal*, 368 F.3d at 1332 (citing *Moses H. Cone,* 460 U.S. at 28). "The weight of each factor varies on a case-by-case basis, depending on the particularities of that case. One factor alone can be the sole motivating reason for the abstention." *Moorer*, 374 F.3d at 997. Overall, the district courts "must weigh these factors with a heavy bias in favor of exercising jurisdiction." *TranSouth Financial Corp. v. Bell*, 149 F.3d 1292, 1295 (11th Cir.1998).

The first factor, whether any court has assumed jurisdiction over the property, does not weigh in favor of abstention. The real property in this action that allegedly has been fraudulently conveyed is not the same real property that is the subject of the two actions in the Baldwin County Circuit Court. Thus, this Court has assumed jurisdiction over the property.

The second factor, the relative inconvenience of the fora, does not weigh in favor of abstention. The parties do not dispute that both courts are equally convenient. *Jackson-Platts*, 727 F. 3d at 1141 (". . . the federal forum and the state forum are equally convenient; this factor thus cuts against abstention.").

The third factor, piecemeal litigation sufficient to merit abstention must be "abnormally excessive or deleterious." *Jackson-Platts*, 727 F. 3d at 1142. SEPH argues that litigating the

7

issue of the Parks' liability in state and federal court is not the sort of abnormally excessive piecemeal litigation anticipated in *Colorado River*. SEPH points out that the AUFTA anticipates provisional litigation of necessary because it provides for voiding a transfer as fraudulent where a creditor's claim is disputed and has not been reduced to a judgment, such as in this action. Ala. Code § 8-9A-4 & 5.

The Parks argue that piecemeal litigation may be abnormally excessive or deleterious where resolution of the state court action may moot the issues before the district court. Specifically, the Parks argue that SEPH must establish its creditor status in order to establish the debtor-creditor relationship necessary to bring an action for fraudulent transfer under the AUFTA. They argue that the potential for conflicting decisions and waste of judicial resources outweighs any prejudice or hardship to SEPH should a stay be entered until the state court actions are resolved.

The third factor weighs in favor of abstention. The risk of conflicting decisions exists in that this Court and the Baldwin County Circuit Court may come to different decisions as to SEPH's status as a creditor. The potential waste of judicial resources exists since it is reasonably probable that the Baldwin County Circuit Court actions will be resolved before this action because the cases are set for trial in September 2014 and March 2015. Importantly, the Baldwin County Circuit Court actions may be resolved in a manner that could moot the issue of SEPH's status as a creditor. *See Mobile County Water, Sewer and Fire Protection Authority, Inc. v. Mobile Area Water and Sewer System,* 2007 WL 2460754, *4 (S. D. Ala. 2007) (citing *Maharaj v. Secretary for Dept. of Corrections,* 432 F. 3d 1292, 130-6 (11th Cir. 2005) (finding that a stay should be denied because there was not a reasonable possibility that resolution of the state court action would moot the issues before the court); *Amason & Associates, Inc. v. Columbus Land*

8

*Development, LLC*, 2014 WL 467509 (N.D. Ala. 2014) (finding "significant potential" that the Mississippi state court action that encompassed one claim brought in the federal action between two of the parties would "moot the issues pending before" it).

The fourth factor, the temporal order in which each forum obtained jurisdiction, weighs in favor of abstention to the extent that the enforceability of the guarantee agreement is at issue. The parties have been litigating in the two state court actions for approximately four years. Extensive discovery has transpired and trials are set for September 2014 and March 2015. Moreover, the Court looks to the "progress of the proceedings and whether the party availing itself of the federal forum should have acted earlier." *Jackson-Platts*, 727 F. 3d at 1142. The Parks formed Parks Family, LLC in September 2009 and transferred the six parcels of real property to this LLC in March 2010. The Parks formed 1307 LLC in March 2010 and that same month, transferred one parcel of real property to this LLC. Vision Bank, SEPH's predecessor made demand on the default of the Water's Edge loan in June 2010 and demand on the default of the Riverfront loan in August 2010. (Docs. 21-7, 21-8, 21-11) Thus, SEPH or its predecessors could presumably have acted earlier instead of waiting until February 2014 to file this action.

The fifth factor, whether state or federal law governs, does not weigh in favor of abstention. Abstention is favored "only where the applicable state law is particularly complex or best left for state courts to resolve." *See Jackson-Platts,* 727 F. 3d at 1143 (citation omitted) (finding that Florida's Uniform Fraudulent Transfer Act was not the "kind of complex law that raises thorny and difficult state law questions[.]") Resolution of an action based upon the AUFTA is not complex or difficult or presenting issues such that it should be left for the Alabama courts to decide. Moreover, the district court routinely addresses issues and claims based upon Alabama law. *Id.* ("[F]ederal courts are regularly called upon to resolve state law

claims of fraud, including claims arising under Florida's UFTA.")

The sixth factor, whether the state court is adequate to protect the parties' rights, it does not weigh in favor of abstention. *See Jackson-Platts*, 727 F. 3d at 1141 (". . . the federal forum and the state forum are equally convenient; this factor thus cuts against abstention."). The parties have been in litigation for approximately four years. Neither party has advanced any argument that the Baldwin County Circuit Court is not an adequate forum to protect their respective rights. While other claims and issues may exist in the state court litigation, of primary importance to this Court is that the litigation may resolve the question of whether the guarantee agreements are enforceable and whether SEPH is a creditor. The state circuit court is an adequate forum to resolve these questions.

While several factors do not weigh in favor of abstention, the Court finds that the potential for piecemeal litigation and the duration of the actions in the Baldwin County Circuit Court weigh heavily in favor of granting the Parks' motion to stay. Accordingly, for the reasons set forth herein, the motion to stay is **GRANTED** and this action is **STAYED** until **April 1, 2015.** The parties are **ORDERED** to file a joint status report on or before **October 1, 2014**, to advise the Court as to the status of the underlying litigation. *See Ortega Trujillo v. Conover & Co. Communications, Inc.*, 221 F.3d 1262, 1264 (11th Cir. 2000) (finding that a district court may stay an action "pending the resolution of related proceedings in another forum." However, the "district court must limit properly the scope of the stay" and the stay "must not be 'immoderate.'")

DONE and ORDERED this the 24th day of July 2014.

                                              s/ Kristi K. DuBose
                                              KRISTI K. DuBOSE
                                              UNITED STATES DISTRICT JUDGE